UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIM TOWNSEND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-03024-JPH-MJD |
| | ) |
| BRIAN MCWILLIAMS Deputy, | ) |
| WATERMAN Deputy, | ) |
| TUNNEY Deputy, | ) |
| ROSTER P.O, | ) |
| COOPER P.O., | ) |
| JOHN DOE OFFICERS Individually, | ) |
| MARION COUNTY, | ) |
| CITY OF INDIANAPOLIS a Municipal Corporation, | ) |
| JUSTIN LEE GOUGH P.O., | ) |
| DEREK MATTHEW JACKSON, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Kim Townsend was driving to the Julian Center when a police officer signaled for her to pull over. Instead of stopping, she drove the rest of the way to the Julian Center and got out of her car. As she quickly walked to the Julian Center's entrance, several Indianapolis Metropolitan Police Department officers and Marion County Sheriff's Office deputies took her to the ground and arrested her. Ms. Townsend alleges that they used excessive force. Defendants have filed a motion for summary judgment, arguing that they are entitled to qualified immunity. Dkt. [77]. For the reasons that follow, that motion is **GRANTED in part and DENIED in part**.

1

# I.
# Facts and Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). The Court notes some factual disputes.

After work on January 6, 2016, Ms. Townsend stopped at a gas station before driving back to the Julian Center where she lived. Dkt. 78-6 at 18 (Townsend Dep. at 71–72). The parties' accounts of what happened during that drive are completely different. Defendants claim that Ms. Townsend led seven officers—in marked police vehicles—on a miles-long chase, speeding down streets and through construction zones, darting between cars, running stoplights and stop signs, striking a construction-zone barrel, and driving on a sidewalk to avoid a school bus. Dkt. 79 at 3–4, 14–15. Ms. Townsend claims she realized that at least one police car was following her, but she did not speed, run a red light, or drive on a sidewalk. Dkt. 93 at 2.

Whatever happened on the drive, Ms. Townsend parked at the Julian center and got out of her car. Dkt. 78-6 at 24 (Townsend Dep. at 93). She noticed a police car behind her and was "scared to death" so she walked quickly to the door to get help from an advocate at the Julian Center. Dkt. 78-6 at 25, 32 (Townsend Dep. at 97, 99–100, 128).

The parties also dispute what happened at the Julian Center's door, even though it was captured on video. *See* dkt. 78-9. According to Ms. Townsend,

Officer Christopher Cooper grabbed her hair, pushed her face into the door, hurled her into the ground by her hair, and tackled her. Dkt. 93 at 3. Then, officers kicked, punched, stepped on, and beat her before she was handcuffed. *Id.* And after she was handcuffed, officers kicked her in the head, dragged her by the handcuffs, and hoisted her up by lifting her arms and shoulders past their limits, causing shoulder injuries. *Id.* Defendants argue that the video of the incident contradicts Ms. Townsend's allegations and instead shows that Officer Cooper "ran into" Ms. Townsend, who struck the door and stumbled to the ground. Dkt. 77 at 6. Then, they used only reasonable force to place Ms. Townsend in handcuffs. Dkt. 101 at 12–14.[1]

Ms. Townsend suffered serious injuries from this encounter, including shoulder injuries requiring surgery. Dkt. 78-6 at 46 (Townsend Dep. at 181–83).

Ms. Townsend brought this action on August 28, 2017, alleging that "John Doe officers" and five named Indianapolis Metropolitan Police Department officers and Marion County Sheriff's Office deputies used excessive force against her. Dkt. 1. She also sued the City of Indianapolis, alleging that it is required to indemnify the officers for any damages. *Id.* Ms. Townsend amended her complaint on March 26, 2018, adding Officers Derek Jackson and Justin Gough as defendants. Dkt. 38. Defendants have moved for summary judgment. Dkt. 77.

---

[1] The facts should not be so hotly and divergently disputed. At too many points to recount, Defendants do not view the evidence in Ms. Townsend's favor and Ms. Townsend does not ensure that the evidence supports her arguments. *See* Fed. R. Civ. P. 56 (c), (e); S.D. Ind. L.R. 56-1 (a), (e), (f).

# II.
# Applicable Law

### A. Summary judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

### B. Qualified immunity

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna,* 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S.

635, 646 (1987)). Qualified immunity thus "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

The "difficult part" of the qualified-immunity test is "identifying the level of generality at which the constitutional right must be clearly established." *Volkman v. Ryker,* 736 F.3d 1084, 1090 (7th Cir. 2013). A "high level of generality" is not appropriate; instead, the question is "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Id.* "Such specificity is especially important in the Fourth Amendment context," because "it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix,* 136 S. Ct. at 308 (quotation and citation omitted).

In excessive force cases, "the result depends very much on the facts of each case," so officers are entitled to qualified immunity unless precedent "*squarely governs*" the case at hand. *Id.* at 309 (quoting *Brosseau v. Haugen,* 543 U.S. 194, 201 (2004)). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 308.

### III.
### Analysis

**A. Qualified immunity on the excessive force allegations**

Ms. Townsend contends that officers used excessive force several times as they arrested her outside the Julian Center. To overcome qualified immunity, she "must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 713 (7th Cir. 2013). Defendants argue that they are entitled to qualified immunity under the second prong because they did not violate Ms. Townsend's clearly established rights. Dkt. 79 at 13–24. The Court thus exercises its discretion to begin with that prong of the test. *See Pearson*, 555 U.S. at 236.

The Court "carve[s] up the incident into segments and judge[s] each on its own terms," evaluating whether each officer is entitled to qualified immunity on each use of force. *Deering v. Reich*, 183 F.3d 645, 652 (7th Cir. 1999); *see Dockery v. Blackburn*, 911 F.3d 458, 465 (7th Cir. 2018); *Estate of Williams by Rose v. Cline*, 902 F.3d 643, 651 (7th Cir. 2018).

### 1. Officer Cooper taking Ms. Townsend to the ground

Defendants argue that Officer Cooper did not violate Ms. Townsend's clearly established rights when he took her to the ground because she was fleeing after an erratic drive that endangered countless people. Dkt. 79 at 16–17, 19. Ms. Townsend disputes what happened on the drive and says that Officer Cooper "slammed into [her] from behind, bounced her face against the glass door by her hair, and then threw her on the ground, yanking her down again by her hair." Dkt. 93 at 9. She also argues that her clearly established

6

rights were violated because she was not merely tackled but was also beaten. Dkt. 93 at 12–13.

The parties spill much ink on the many disputed facts about what happened as Ms. Townsend drove to the Julian Center. *See* dkt. 79 at 16–17, 19; dkt. 93 at 7–8, 12. But regardless of what happened on the drive, Officer Cooper is entitled to qualified immunity. *See Kunik v. Racine County, Wisconsin,* 106 F.3d 168, 174 (7th Cir. 1997). It's undisputed that more than one police vehicle—with lights activated—followed Ms. Townsend as she drove to the Julian Center. Dkt. 78-6 at 20–21, 26 (Townsend Dep. at 79, 82–83, 101–04). At the Julian Center, she noticed the police car behind her and walked quickly to the Julian Center's door. Dkt. 78-6 at 25, 32 (Townsend Dep. at 97, 99–100, 128).

Ms. Townsend's failure to stop gave Officer Cooper the right to arrest her, and an officer who has the right to arrest has the right to use "some degree of physical force to effectuate the arrest." *Stainback v. Dixon,* 569 F.3d 767, 772 (7th Cir. 2009) (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)). And because Ms. Townsend was fleeing, it was reasonable for Officer Cooper to take her to the ground. *Catlin v. City of Wheaton,* 574 F.3d 361, 367 (7th Cir. 2009). Indeed, in *Blazek v. City of Iowa City*—a case that Ms. Townsend cites for another purpose—the Eighth Circuit said that an officer was entitled to qualified immunity after he grabbed a belligerent arrestee's arm, "twisted the arm up behind him, and threw him to the ground." 761 F.3d 920, 922–25 (8th Cir. 2014).

7

With no law showing that, on these facts, Officer Cooper violated a clearly established right by taking her to the ground, Ms. Townsend cannot overcome qualified immunity. *See* dkt. 93 at 9–10, 13. This case is thus much like *Findlay v. Lendermon*, 722 F.3d 895 (7th Cir. 2013). There, a sheriff's deputy tried to confiscate a camcorder memory chip with evidence on it, but the plaintiff grabbed the chip, which ended up under a washing machine. *Id.* at 898. The plaintiff reached to pick it up, and the deputy grabbed him by the shoulders and tackled him. *Id.* The Seventh Circuit held that qualified immunity applied because the plaintiff did not meet his burden to identify a sufficiently analogous case or explain how the deputy's tackle plainly violated the constitution. *Id.* at 900. The same is true here.

Ms. Townsend also argues that Defendants' conduct was "brutal" enough to be plainly unconstitutional, so no precedent showing a clearly established right is required. Dkt. 93 at 13. She can prevail without analogous case law only if the constitutional "violation is so patent that no violator has even attempted to obtain an appellate ruling on it." *Estate of Escobedo v. Bender,* 600 F.3d 770, 781 (7th Cir. 2010). As explained above, that is not the case here in light of *Stainback*, *Catlin*, *Blazek*, and *Findlay*. *See id.*

Officer Cooper is therefore entitled to qualified immunity on this part of Ms. Townsend's claim.

### 2. All Defendants' force against Ms. Townsend on the ground before she was handcuffed

8

Defendants argue that they are entitled to qualified immunity on the claims that they used excessive force when they restrained Ms. Townsend in order to handcuff her. Dkt. 79 at 19, 21–23. Ms. Townsend responds that qualified immunity is inappropriate because the officers "kicked, hit, punched, and stepped on her" even though she was not resisting. Dkt. 93 at 12–13.[2]

The evidence, viewed favorably to Ms. Townsend, is that while she was face-down on the ground, she felt officers stepping on her, dkt. 78-6 at 35 (Townsend Dep. at 137), though the video shows that they were more likely kneeling on her, dkt. 78-9. The officers struggled to handcuff Ms. Townsend, *id.*, but there is no evidence they kicked, hit, or punched Ms. Townsend before she was handcuffed. *See* dkt. 78-6 at 35–38 (Townsend Dep. at 137, 139–40, 142, 147, 149). She was not resisting, but she had been fleeing and had not obviously surrendered. Dkt. 78-6 at 35 (Townsend Dep. at 137, 139–40).

Given this situation, Ms. Townsend has cited no law clearly establishing that officers used excessive force against her. *See* dkt. 93 at 9–13. She does not argue that specific uses of force were excessive, but that she was generally beaten and pummeled. Dkt. 93 at 3, 9, 13–14. Considering the video evidence, lack of cited authority, and vague arguments, Ms. Townsend cannot show that any contact the officers may have made with her incident to the arrest, including a hit to the back or being stepped or knelt on, was excessive

---

[2] Neither party clearly distinguishes the force used before Ms. Townsend was handcuffed from the force used after she was handcuffed. *See* dkt. 79 at 19–24; dkt. 93 at 12–15. But the Seventh Circuit draws that distinction, *see, e.g.*, *Sallenger v. Oakes*, 473 F.3d 731 (7th Cir. 2007), so this Court does too.

9

under clearly established law. *See Findlay*, 722 F.3d at 899–900 (holding that deficient analysis of clearly established law on an excessive-force claim cannot carry a plaintiff's burden).

Rather, the officers had the right to use reasonable force to arrest Ms. Townsend. *See Stainback*, 569 F.3d at 772. And it's generally reasonable for officers to use substantial force to subdue and handcuff a suspect who was fleeing and had not (or had suspiciously) surrendered. *See Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009) (German Shepard bite was not unreasonable after flight and questionable surrender); *Catlin*, 574 F.3d 361; *Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007); *cf. Alicea v. Thomas*, 815 F.3d 283 (7th Cir. 2016); *Miller v. Gonzalez*, 761 F.3d 822 (7th Cir. 2014) (unreasonable to break the jaw of a clearly prone and subdued suspect). Indeed, "police are entitled to err on the side of caution when faced with an uncertain or threatening situation." *Johnson*, 576 F.3d at 659.

All Defendants are therefore entitled to qualified immunity on the force applied before Ms. Townsend was handcuffed.

### 3. All Defendants' force against Ms. Townsend on the ground after she was handcuffed

Defendants also argue that they are entitled to qualified immunity on Ms. Townsend's claims of excessive force used after she was handcuffed. Dkt. 79 at 19–24. Ms. Townsend responds that qualified immunity is inappropriate because the officers kicked her in the head after she was handcuffed. Dkt. 93 at 12–15. She also testified at her deposition that she "felt a hit" to her back,

10

but later said that she "didn't say she was hit to the back" but instead "felt . . . pressure." Dkt. 78-6 at 37–38 (Townsend Dep. at 147, 149).[3] In reply, Defendants argue that Ms. Townsends' account is clearly contradicted by the video. Dkt. 101 at 11–14.

For the pressure in her back, the view in the video is too obscured to confirm or contradict either side's allegations, but it does show a struggle that continued as Ms. Townsend was being handcuffed and briefly thereafter. Dkt. 78-9. Ms. Townsend has not cited a case clearly establishing that the "pressure" or a single hit incident to arrest was excessive force given that continued struggle. In the closest case, *Sallenger*, officers continued to hit a suspect with a flashlight and closed-fist blows after he stopped moving. 473 F.3d at 740–41. Here, the ongoing struggle and limited force make this case different. *See Abdullahi v. City of Madison*, 423 F.3d 763, 771 (7th Cir. 2005) ("Kneeling with just enough force to prevent an individual from 'squirming' or escaping might be eminently reasonable, while dropping down on an individual or applying one's full weight (particularly if one is heavy) could actually cause death.").

For the kick to her head, from before the time Ms. Townsend was handcuffed, the video shows where her head was and where each officer was. Dkt. 78-9. The video clearly shows that during that time, no officer made any move that could be construed as a kick to the head. *Id.* In fact, Ms. Townsend

---

[3] Ms. Townsend's deposition seems to show that she felt the pressure in her back after she was handcuffed, but it's not entirely clear. Dkt. 78-6 at 38 (Townsend Dep. at 149). This timing question does not change the reasoning and result.

11

admitted that when she watched the video she did not see anyone kick her in the face. Dkt. 78-6 at 36 (Townsend Dep. at 143). There are no allegations that the video was altered or that it differs from what happened. *See Scott v. Harris,* 550 U.S. 372, 379 (2007). The Court therefore "should not adopt" Ms. Townsend's version of the facts since it "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott,* 550 U.S. at 379; *see Dockery,* 911 F.3d at 466 (finding a plaintiff's account "utterly discredited" under *Scott*).

All Defendants are thus entitled to qualified immunity on these claims of excessive force applied after Ms. Townsend was handcuffed.

### 4. Officer Jackson hoisting Ms. Townsend up from the ground

Ms. Townsend argues that Defendants violated her clearly established rights when they "dragged and lifted her" to her feet." Dkt. 93 at 12–13. Defendants do not address this argument, except to argue that "the video does not show Townsend getting dragged." *See* dkt. 79 at 13–24, dkt. 101 at 13–17.

The video, viewed in Ms. Townsend's favor, shows that after she was handcuffed, she was lying face down on the ground, not moving. Dkt. 78-9. One officer grabbed her near her wrists and pulled her a short distance, then hoisted her to her feet by pulling her arms upward behind her back. *Id.*[4] The evidence indicates that the officer was Officer Jackson. Dkt. 78-7 at 20

---

[4] A sheriff's deputy stepped in at the end to help. Ms. Townsend does not specify a claim against this unidentified deputy for his minor role in getting Ms. Townsend to her feet. *See* dkt. 93 at 11–15.

(Cooper Dep. at 34); dkt. 78-11 at 17 (McWilliams Dep. at 49); dkt. 78-12 at 10 (Jackson Dep. at 41).

Unlike when a suspect is fleeing or resisting, it "is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders." *Johnson,* 576 F.3d at 659; *see Sallenger,* 473 F.3d at 740 ("Although closed-fist blows and blows with the flashlight may have been necessary at first, this does not mean that this force was still justified after the handcuffs had been secured."). "This prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Miller,* 761 F.3d at 829; *see Johnson,* 576 F.3d at 659 ("When a suspect waves the white flag of surrender, the use of force in connection with an arrest may, as an objective matter, become unnecessary and inappropriate."). That's because the justification for using force—protecting officers and the public from threatening situations—disappears when officers have gained control over a suspect. *See Sallenger,* 473 F.3d at 740.

Indeed, the Seventh Circuit has repeatedly warned officers about the use of force against subdued suspects. *E.g. Kingsley v. Hendrickson,* 801 F.3d 828, 832 (7th Cir. 2015) (Tasing a manacled suspect); *Miller,* 761 F.3d at 829 (breaking arrestee's jaw with knee); *Sallenger,* 473 F.3d at 742 (closed-fist punching and flashlight blows); *Abdullahi,* 423 F.3d at 769–70 (kneeling on arrestee's back); *Frazell v. Flanigan,* 102 F.3d 877, 884–85 (7th Cir. 1996)

13

(striking and dragging across pavement); *Rambo v. Daley,* 68 F.3d 203, 207 (7th Cir. 1995) ("The Constitution clearly does not allow police officers to force a handcuffed, passive suspect into a squad car by breaking his ribs."). Seventh Circuit precedent has therefore "placed the . . . constitutional question beyond debate" and qualified immunity does not apply. *Mullenix,* 136 S. Ct. at 308.

Moreover, "a clear trend in the case law" of the Seventh Circuit and other circuits gave Officer Jackson "fair warning" that hoisting Ms. Townsend to her feet by pulling her arms upward behind her back would be excessive force. *Bender,* 600 F.3d at 781. In *Stainback,* 569 F.3d at 772, the Seventh Circuit held that "an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." And in *Payne v. Pauley,* 337 F.3d 767, 780 (7th Cir. 2003), the Seventh Circuit noted that it was "well established [in 1998] that it was unlawful to . . . violently yank the arms of arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officer or others, and were suspected of committing only minor crimes." *See also Clash v. Beatty,* 77 F.3d 1045 (7th Cir. 1996).

Other circuits have made similar holdings. The Eighth Circuit said that if a plaintiff "can prove at trial that he was subdued and compliant, but that officers grabbed him by the arms and gratuitously 'jerked' him from the floor onto the bed, using enough violent force to cause significant injury, then . . . a reasonable jury could find a violation of the Fourth Amendment." *Blazek,* 761 F.3d at 926. And the Sixth Circuit has said that using handcuffs to "'rip' [a

14

plaintiff] out of his vehicle and force him to the ground" is objectively unreasonable under the Fourth Amendment. *Solovy v. Morabito*, 375 F. App'x 521, 525 (6th Cir. 2010). *See also Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007).

As this case law makes clear, hoisting a handcuffed suspect to her feet by pulling her wrist area with her arms behind her back is "almost guaranteed to cause substantial pain." *Id.* at 527. And indeed, Ms. Townsend suffered shoulder injuries requiring surgery. Dkt. 78-6 at 46 (Townsend Dep. at 181–83). Those injuries are "evidence of the degree of force imposed and the reasonableness of that force," so they support to Ms. Townsend's excessive force claim. *McAllister v. Price,* 615 F.3d 877, 882 (7th Cir. 2010); *see Abdullahi,* 423 F.3d at 772 ("We have previously held that medical evidence and other circumstantial evidence can be sufficient to create triable issues of fact in excessive force cases.").

Officer Jackson had "fair warning" that hoisting Ms. Townsend to her feet in this situation would be excessive force, so he is not entitled to qualified immunity on this claim. *Bender,* 600 F.3d at 781.

### B. Relation back of the amended complaint against Officer Jackson

Officer Jackson argues that Ms. Townsend's amended complaint added him as a defendant after the statute of limitations had run and does not relate back to the original complaint. Dkt. 79 at 27–32.[5] Ms. Townsend argues that

---

[5] Officer Gough makes the same argument, but as explained above Ms. Townsend's only surviving claim is against Officer Jackson.

15

the amended complaint relates back under Federal Rule of Civil Procedure 15(c). Dkt. 93 at 15–22.

An amended complaint relates back under Federal Rule of Civil Procedure 15(c) if:

> (1) It "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading"; and
>
> (2) "within the period provided by Rule 4(m)" for service of process, Defendant:
>
>> (a) "received such notice of the action that it will not be prejudiced in defending on the merits"; and
>>
>> (b) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

See *Joseph v. Elan Motorsports Tech. Racing Corp.*, 638 F.3d 555, 559–60 (7th Cir. 2011).

Here, the parties dispute whether Officer Jackson had enough notice to avoid prejudice, and whether he knew or should have known that Ms. Townsend would have sued him too but for a mistake. Dkt. 79 at 27–32; dkt. 93 at 15–22. However, the parties incorrectly focus their timing analysis on the statute of limitations rather than on the "period provided by Rule 4(m)" for service of process. Fed. R. Civ. P. 15(c)(1)(C); *see Keller v. United States*, 444 F. App'x 909, 911 (7th Cir. 2011). And neither side has responded to all of the opposing party's arguments, despite the unsettled application of Rule 15(c)

16

after *Krupski v. Costa Crociere,* 560 U.S. 538 (2010), and *Joseph,* 638 F.3d at 559–60.

Officer Jackson therefore **MAY FILE** a supplemental motion for summary judgment on this issue **by December 2, 2019**, with a brief in support not to exceed 10 pages.  Ms. Townsend may file a response **by December 16, 2019**, not to exceed 15 pages.  Officer Jackson may file a reply **by December 23, 2019**, not to exceed 5 pages.

Any summary judgment briefing **shall address** at least the following areas:

1) The timeline of the period allotted in Rule 4(m) for service of process.
2) What notice Officer Jackson had and what he knew or should have known about the lawsuit and original complaint during the period allotted in Rule 4(m) for service of process.
3) Whether naming Officers Waterman and Roster instead of Officer Jackson in the original complaint was a "mistake" under Rule 15(c)(1)(C)(ii).
4) Whether any mistake is clear on the face of the original complaint and, if so, whether Officer Jackson knew or should have known of that mistake.

### C. Indemnification

Defendants last move for summary judgment on Ms. Townsend's indemnification claim.  They argue that Ms. Townsend lacks standing to bring

17

this claim because Indiana law does not create a private right of action. Dkt. 79 at 26–27. Ms. Townsend responds that she is arguing a federal rather than a state cause of action and that Indiana law compels indemnification of officers accused of constitutional violations. Dkt. 93 at 22.

The indemnification issue is premature at this summary judgment stage. The Seventh Circuit has "warned repeatedly against trying to resolve indemnity before liability." *Doe v. City of Chicago,* 360 F.3d 667, 672 (7th Cir. 2004); *see Lear Corp. v. Johnson Elec. Holdings Ltd.,* 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established."). Defendants cite no law showing that this claim should be resolved now. The Court will therefore return to the indemnification issue, if necessary, after liability is determined.

## IV.
## Conclusion

Defendants' motion for summary judgment, dkt. [77], is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to Defendants McWilliams, Waterman, Tunney, Roster, Cooper, Gough, and John Doe officers, who are **DISMISSED**; the clerk **shall update** the docket accordingly. The motion is **DENIED** as to Ms. Townsend's claim that Officer Jackson used excessive force by pulling her by the wrists or handcuffs.

**SO ORDERED.**

Date: 10/30/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Elise Bowling
OFFICE OF CORPORATION COUNSEL
elise.bowling@indy.gov

Martin Austin Brown
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS, LLP
mab@rucklaw.com

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS, LLP
ard@rucklaw.com

Tara Lynn Gerber
City of Indianapolis
tara.gerber@indy.gov

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS, LLP
jfk@rucklaw.com

Gregory E. Kulis
GREGORY E. KULIS & ASSOCIATES LTD.
gkulis@kulislawltd.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS, LLP
ejm@rucklaw.com

Brian M. Orozco
GREGORY 3. KULIS & ASSOCIATES, LTD.
borozco@kulislawltd.com

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov